*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ANTONIO THOMAS GARZA,

       Defendant-Appellant.

UNPUBLISHED
January 21, 2020

No. 344870
Wayne Circuit Court
LC No. 11-008973-01-FH

Before: RIORDAN, P.J., and SAWYER and JANSEN, JJ.

PER CURIAM.

After a bench trial, defendant Antonio Thomas Garza was found guilty of first-degree home invasion, MCL 750.110a(2), and assault with intent to commit great bodily harm, MCL 750.84, and was sentenced as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of 57 months to 20 years for the home-invasion conviction and 24 months to 10 years for the assault conviction. He appeals as of right. We affirm.

Defendant was alleged to have entered the complainant's house, possibly breaking the lock on a screen door, and to have assaulted the complainant. The complainant testified at trial that defendant used brass knuckles. It appears that defendant was upset about the way the complainant had treated defendant's young son.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that a new trial is required because the prosecution failed to present sufficient evidence to support the "breaking and entering" element of the home-invasion charge. He claims that the complainant's testimony that defendant "came 'flying' through" his door was too implausible to be believed considering the fact that the complainant was intoxicated at the time and the fact that a police officer did not recall seeing any damage to the door. In his pro se brief filed pursuant to Administrative Order No. 2004-6, Standard 4, defendant relatedly argues that he should have been found not guilty because the complainant's testimony was too incredible to be believed. We do not find these arguments compelling.

The trial court found defendant guilty of first-degree home invasion under MCL 750.110a(2). To find defendant guilty of that offense, a jury must find the following elements beyond a reasonable doubt:

(1) the defendant either breaks and enters a dwelling or enters a dwelling without permission; (2) the defendant either intends when entering to commit a felony, larceny, or assault in the dwelling or at any time while entering, present in, or exiting the dwelling actually commits a felony, larceny, or assault; and (3) while the defendant is entering, present in, or exiting the dwelling, either (a) the defendant is armed with a dangerous weapon, or (b) another person is lawfully present in the dwelling. [*People v Bush*, 315 Mich App 237, 244; 890 NW2d 370 (2016), citing MCL 750.110a(2); *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010).]

"When reviewing an argument following a bench trial that insufficient evidence existed . . . 'this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.' " *People v Muhammad*, 326 Mich App 40, 60; 931 NW2d 20 (2018), quoting *People v Hutner*, 209 Mich App 280, 282; 530 NW2d 174 (1995). That is, "evidence is sufficient to convict a defendant when a rational factfinder could determine that the prosecutor proved every element of the crimes charged beyond a reasonable doubt." *People v Cain*, 238 Mich App 95, 117; 605 NW2d 28 (1999. This Court will not, however, interfere with the factfinder's role of resolving credibility disputes. *Muhammad*, 326 Mich App at 60.

Defendant's arguments ask us to do exactly that—interfere with the factfinder's role of resolving credibility disputes. During trial, the complainant testified that, in order to enter the home, defendant broke the lock on his screen door:

*Q*. Now when Mr. Garza came to your home, did you see him enter through the screen door?

*A*. No.

*Q*. What did you see?

*A*. I didn't see him enter through the screen door. He just flew in. He kind of like ran into my house. Bust the lock on the door and ran in.

* * *

*A*. The screen door. They got a little lock on the screen door on the handle. I always keep it locked because of the dog."

The complainant expressly denied inviting defendant into his home.

As defendant points out, weighing against the complainant's testimony in this regard was the fact that the complainant was intoxicated at the time of the incident. Likewise, the police officer who responded to the scene and testified at trial did not recall noticing anything

-2-

"unusual" about the screen door that the complainant said defendant "bust[ed] the lock on . . . ." And finally, defendant testified that he did not break the lock. Instead, he claimed, the complainant invited him inside. However, the trial court expressly found that defendant "entered [the complainant's] house without permission," and it is apparent that the court found the complainant's testimony with respect to how defendant entered the home more credible than defendant's testimony. Again, this Court will not interfere with such a credibility determination. Accordingly, we reject defendant's argument in this regard.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues in his Standard 4 brief that he was denied the effective assistance of counsel. We find nothing to substantiate this claim.

Because this Court denied defendant's motion for a remand for an evidentiary hearing to develop this claim, *People v Garza*, unpublished order of the Court of Appeals, entered July 11, 2019 (Docket No. 344870), our review is "limited to mistakes that are apparent from the record." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). "Whether a defendant was deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. Any findings of fact are reviewed for clear error, while the legal questions are reviewed de novo." *Id*.

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). "[E]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## A. PLEA-BARGAIN NEGOTIATIONS

Defendant first contends that trial counsel's performance constituted ineffective assistance of counsel because he "failed to adequately investigate, advise, and discuss the ongoing negotiation plea bargaining process and the consequences of the outcome of the potential plea bargain offer." " 'As at trial, a defendant is entitled to the effective assistance of counsel in the plea-bargaining process.' " *People v Pennington*, 323 Mich App 452, 461; 917 NW2d 720 (2018) (citations omitted). To prevail on an ineffective-assistance argument with respect to the plea-bargaining process, however, " 'a defendant must show the outcome of the plea would have been different with competent advice.' " *Id*. (citations omitted).

On appeal, defendant does not identify any support for the notion that the outcome of the plea-bargaining process would have been different with competent or different advice. Instead, he merely claims in his Standard 4 brief that those negotiations would have resulted in the prosecution "reduc[ing] the charges [in a way] that would not send the Defendant-Appellant to prison, but instead sentence him to possibly probation, county jail time, or the Special Alternation [sic, Alternative] Incarceration Program." He continues, claiming that "he would

have accepted a plea bargain that was within his correct guidelines and for reduced charges," assuming "the severe charges reduced the possibility of the Special Alternative Incarceration Program would have been available" and that "county jail time would have also been a possibility."

While it is true, as defendant suggests, that there was some discussion on the record between the attorneys about a *Cobbs*[1] evaluation and the potential for county-jail time during an early-stage hearing, it is clear that these on-the-record discussions were preliminary in nature—taking place even before the case was assigned to the trial judge. Defendant's argument indicates that he is simply assuming that he could have pleaded guilty to reduced charges with guarantees of favorable sentencing; nothing in the record supports those assumptions. Because there are no "mistakes that are apparent from the record," we reject defendant's ineffective-assistance argument regarding plea negotiations. *Head*, 323 Mich App at 539.

## B. DEFENSE WITNESSES

Defendant also argues that trial counsel's performance constituted ineffective assistance because he "failed to do an adequate investigation and interview the three (3) defense Res Gestate [sic] witnesses"—defendant's wife at the time, defendant's four-year-old son, and a third witness whom defendant claims could have impeached the complainant's credibility. He asserts that counsel "fail[ed] to properly prepare a substantial defense of his actual innocence of First Degree Home Invasion and Assault With Intent to do Great Bodily Harm Less Than Murder and non-deadly use of self-defense." However, "[d]ecisions regarding whether to call or question a witness are presumed to be matters of trial strategy." *People v Putnam*, 309 Mich App 240, 248; 870 NW2d 593 (2015). And "[t]rial counsel's failure to call a witness is only considered ineffective assistance if it deprived the defendant of a substantial defense," i.e., "one that could have affected the outcome of the trial." *Id.* "This Court will not 'second-guess counsel on matters of trial strategy,' nor will it 'assess counsel's competence with the benefit of hindsight.' " *Id.* (citation omitted).

Because this Court will not second-guess trial counsel's decision not to call the three witnesses, we could reject defendant's argument in this regard on its face. Even if we did not, however, defendant has not shown that he was deprived of a substantial defense as a result of these witnesses' failure to testify. He claims that his wife at the time would have provided background testimony regarding the babysitting arrangement for the four-year-old son at which the complainant may have mistreated the child, that his four-year-old son would have testified that the complainant "choked him with both of his hands around his neck while lifting him up off his feet until he could not breathe and passed out," and that the third witness would have testified regarding defendant's whereabouts before the incident. None of this purported testimony would have had any bearing on the primary issue at trial—whether defendant was acting in self-defense. In fact, rather than supporting defendant's theory of defense, the proposed testimony of defendant's son would have fit the prosecution's theory perfectly—that defendant attacked the

---

[1] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

complainant because the complainant disciplined his son. This would have made the prosecution's case stronger and the defense weaker, which actually supports trial counsel's strategic decision not to call defendant's son, a four-year-old child, as a witness. Again, because there are no "mistakes that are apparent from the record," we reject defendant's ineffective-assistance argument regarding counsel's failure to investigate or call these three witnesses. *Head*, 323 Mich App at 539.

## C. GUIDELINES

Finally, defendant argues that trial counsel "failed to do his duty and conduct an investigation and properly calculate his sentencing guidelines scores on his Prior Record Variables[PRVs]" because defendant did not have any convictions in Dearborn and the offense variables (OVs) regarding possession of a weapon because "[t]he Defendant-Appellant used his bare fists only." Also, defendant challenges the scoring of these variables on appeal. Alternatively, he argues that resentencing is required because the sentencing court relied on inaccurate information in scoring prior record variable (PRV) 5 and offense variable (OV) 1. He asserts that resentencing is required because "OV 1 has been inaccurately scored [at] 10 points" and "OV 2 has been inaccurately scored [at] 1 point." OV 1 is generally to be scored at 10 points if the victim was "touched" by a weapon other than a knife or some sort of harmful substance or device. See MCL 777.31(1)(d). OV 2 is generally to be scored at one point if the defendant possessed or used a potentially lethal weapon other than a harmful substance or device, a gun, or a knife. See MCL 777.32(1)(d). Defendant also argues that resentencing is required because PRV 5 was inaccurately scored at five points. PRV 5 is to be scored at five points if "[t]he offender has 2 prior misdemeanor convictions or prior misdemeanor juvenile convictions." MCL 777.55(1)(d).

"A trial court may consider all record evidence when calculating the sentencing-guidelines range." *People v Savage*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 339417), slip op at 6. Regarding the OV scoring, defendant argues that both OVs were incorrectly scored based on the assumption that he used a weapon when, in fact, he "used his bare fists only . . . ." However, the trial court expressly found that defendant used a weapon: "It's quite obvious if you looked at this man's, the damage that was done to him, that something other than a fist was used on him. If you look at these pictures, you can see that. It wasn't just fist to face." This decision was based on the complainant's testimony that defendant struck him with brass knuckles as well as photographs of his injuries after the attack. In light of this evidence, it cannot be said that such a decision was clearly erroneous. Thus, contrary to defendant's assertion that he "used his bare fists only," the trial court was justified in concluding that defendant used some sort of weapon for sentencing purposes.

Our conclusion with respect to the scoring of OVs 1 and 2 resolves the ultimate issue as to whether resentencing is required in this case. It is not. Even if we assume that defendant's argument with respect to PRV 5 is correct, i.e., that it should have been scored at zero points rather than five points, defendant's sentencing-guidelines range would not have changed. This is because both Class B offenses (including assault with intent to commit great bodily harm) and Class D offenses (including first-degree home invasion) require application of PRV Level D if the total PRV points fall between 25 and 49, and both 35 (defendant's requested total PRV score) and 40 (defendant's presumed total PRV score) fall in PRV Level D. See MCL 777.63; MCL

-5-

777.65. Stated more simply, even if defendant is correct, the applicable PRV Level would not change. And because his argument with respect to OVs 1 and 2 is meritless, his sentencing-guidelines range as a whole would not change.

While not identified in defendant's statement of issues presented, defendant additionally asserts that he "was not given the 21 day notice for the enhancement of sentence by the Prosecution after the Arraignment of Information was waived by Trial Counsel in the Third Judicial Circuit Court." However, the original complaint in this case included the second-offense habitual offender notice. The original felony information did as well. In short, the prosecution clearly provided the requisite notice to defendant. See generally MCL 769.13. Accordingly, we reject all of defendant's arguments with respect to sentencing.

Affirmed.

/s/ Michael J. Riordan
/s/ David H. Sawyer
/s/ Kathleen Jansen